Filed 12/20/24  P. v. Shubaralyan CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B332920 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA085711) |
| v. | |
| KARLEN SHUBARALYAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hilleri G. Merritt, Judge.  Affirmed.

Tahmazian Law Firm and Jilbert Tahmazian for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Appellant Karlen Shubaralyan appeals the denial of his motion to withdraw his plea under Penal Code section 1473.7, subdivision (a).[1]  Because he has not met his burden of showing that he lacked a meaningful understanding of the immigration consequences of his plea, or that the lack of such understanding prejudiced him, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[2]

### I.     Facts

Appellant was born in Armenia when it was part of the Soviet Union and came to the United States with his family when he was a young child.  He possesses both Soviet and Armenian passports.  Appellant was married for 11 years and has two children with his ex-wife.  He continued living with her after the divorce.

In 2012, appellant was charged with grand theft (§ 487, subd. (a)) and several counts of writing a check on insufficient funds (§ 476a, subd. (a)).  Appellant was released on bail.  Deportation proceedings were commenced against appellant, but he was allowed to remain "out and about."

### II.    Procedural Background

#### A.     *The charged offenses*

On January 27, 2016, while his grand theft case was still pending, appellant approached his ex-wife (victim) as she got out of the shower, screaming at her.  Appellant punched the victim in the face, knocking her unconscious, and then proceeded to kick her while she was on the ground.  Appellant took the victim to

---

[1] Undesignated statutory references are to the Penal Code.

[2] Because there was no preliminary hearing, the facts are drawn mostly from the probation officer's report.

the bedroom and raped her. Worried about the severity of her injuries, appellant took the victim to the family's plastic surgeon and told her to lie about how she was injured. Several days later, the victim reported appellant's abuse to the police.

In an information filed on February 17, 2016, the People charged appellant with two counts of "injuring a spouse, cohabitant . . . or child's parent" (§ 273.5, subd. (a)); one count of forcible rape (§ 261, subd. (a)(2)); one count of first degree burglary with a person present (§ 459); two counts of dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1)); three counts of making criminal threats (§ 422, subd. (a)); and one count of stalking (§ 646.9, subd. (b)). As to seven of these 10 counts, the People further alleged that appellant committed the offenses while released from custody on bail (§ 12022.1).

**B.** *The plea*

On July 15, 2016, the date set for the preliminary hearing, the People offered a plea deal for appellant to receive six years, waiving back time, in exchange for pleading to one count of bodily injury to a cohabitant, with an enhancement for great bodily injury, and one count dissuading a witness from reporting a crime. Appellant made a counteroffer of five years at half time. The People countered with five years at half time, waiving back time. Appellant rejected this offer against his counsel's advice, and the court recessed for lunch. Appellant spoke with his girlfriend during the break. When he returned, he remained steadfast in his rejection of the offer. But just as the court called the first witness for the preliminary hearing, appellant's attorney announced "we have a deal."

Appellant signed a form agreeing to a five-year sentence, waiving back time, in exchange for a plea of no contest to one

3

count of making criminal threats (§ 422, subd. (a)) while released on bail (§ 12022.1). Appellant placed his initials on the form next to the advisement, "I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation." He also signed a written advisement of rights and waivers containing a similar warning.

The trial court asked appellant whether he reviewed the form with his attorney; appellant responded "yes." He affirmed that he had placed his initials next to the boxes to acknowledge that he understood "all the consequences of [his] plea," including the consequence that if he is not a United States citizen, "entering into this disposition will result in deportation." Appellant also acknowledged "that a plea of no contest has the same force and effect as a guilty plea."

Appellant then pleaded no contest to one count of making criminal threats and to committing the offense while out on bail. The trial court found appellant's plea to be "knowing, intelligent, voluntar[y], and express," and sentenced appellant to the high term of three years for making criminal threats, plus two years for the out-on-bail enhancement.

Shortly after entering his plea, appellant was deported to Armenia.

### C. *First motion to vacate conviction, denied in 2019*

Appellant filed a motion to vacate his conviction under section 1473.7. The trial court denied that motion in July 2019. The briefing and ruling on that motion are absent from the record.

### D. *Second motion to vacate conviction*

On August 25, 2021, appellant filed a second motion to vacate his conviction under section 1473.7, arguing that he did

4

not meaningfully understand the immigration consequences of his 2016 plea because his defense counsel had misadvised him. In support of the motion, appellant submitted his own and his defense counsel's declarations.

### 1. Appellant's declaration

Appellant stated that he had been a legal permanent resident of the United States "for over 30 years." His parents, sister, and children are all United States citizens. Appellant told his trial counsel that his "biggest objective was to stay [in the United States] with [his] family." His counsel did not inform him about the immigration consequences and if he had known, he "would have taken [his] case to trial or asked [his] attorney to negotiate a different plea."

### 2. Trial counsel's declaration

Appellant's trial counsel stated that he advised appellant that "in light of the number of years he had lived in the United States, the fact that he possessed a [Soviet Union] passport, and his family ties in the United States, it was unlikely that he would be deported to Armenia." Counsel "was unaware that [appellant] had an Armenian passport" when he advised appellant on the consequences of his plea.

### E. *The hearings and ruling on the second motion*

The trial court convened a hearing on appellant's motion on March 11, 2022. Appellant's trial counsel testified that appellant told him he had a passport from the Soviet Union, but did not tell him that he also had an Armenian passport. He did not remember whether he knew that appellant had been served with an immigration hold in March 2016. Appellant's trial counsel did not know appellant was receiving advice from an immigration attorney. Based on the information counsel had, he advised

appellant that he would not be sent back to the Soviet Union because it does not exist, and that because appellant did not have a country to be deported to, he would not be deported. Appellant did not testify at the hearing.

The People introduced transcripts of phone calls between appellant and his acquaintance Jessica Parido (Parido) while appellant was in jail. These transcripts are not in the record on appeal, but the discussion about them at the hearing shed light on their content: Appellant told Parido that he was not deportable as a citizen of the Soviet Union. She responded to the effect of, "no, he's not saying that at all" ("he" being appellant's immigration attorney). Parido told appellant that his immigration attorney was worried about the charges appellant faced because it *was* possible he could be deported. Appellant responded that he could only be deported if he gets convicted.

After the jail call transcripts were admitted into evidence, the People suggested that appellant's immigration attorney be brought to court to testify. The court agreed and continued the hearing so the attorney could be subpoenaed.

On August 30, 2022, appellant filed a supplemental brief stating that his immigration attorney had passed away and his files destroyed.

On May 18, 2023, appellant filed the declaration of another immigration attorney, Andre Boghosian (Boghosian), who stated that "a person born in Armenia during the Soviet time . . . would be removed to Armenia upon a final order of removal even absent the possession of an Armenian passport." Boghosian referred to 8 United States Code section 1231, which provides that an alien may be removed to " '[t]he country in which the alien's birthplace is located when the alien is ordered removed.' "

6

On June 7, 2023, appellant filed another supplemental brief to argue that Boghosian's declaration shows that appellant's trial counsel's performance was deficient.

On June 14, 2023, the trial court resumed the hearing on appellant's motion to vacate. After acknowledging that in 2019 the court denied a prior motion to vacate appellant's conviction under section 1473.7, the court stated that it was construing "[this] motion [as] simply a motion to reconsider." Turning to the merits of the motion, the court observed that Parido told appellant during the jail calls that his immigration attorney was worried about deportation, and that appellant appeared to not take that concern seriously. The court denied appellant's motion, finding that "under the totality of the circumstances" appellant knew there was a likelihood he would be deported if he accepted the plea, "but he rolled the dice and he lost."

## DISCUSSION

Appellant argues that the trial court erred in denying his motion to vacate his conviction because he showed by a preponderance of the evidence that he lacked a meaningful understanding of the adverse immigration consequences of his plea, and that it is reasonably probable he would have rejected the plea had he understood the consequences.

## I.     Forfeiture

The People urge us to dismiss this appeal because the trial court denied an earlier motion to vacate appellant's conviction under section 1473.7, appellant did not appeal from that ruling, and he omitted materials related to that motion from the record. (See *People v. DeLouize* (2004) 32 Cal.4th 1223, 1232–1233 [a party's failure to file a timely appeal from an appealable order shows acquiescence in the ruling, which may bar a motion for the

7

trial court to reconsider the ruling]; *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' "].) The omission of the materials related to the earlier motion leaves open the possibility that the issues raised in appellant's second motion were already argued and decided on their merits. Whether or not this was the case, however, the trial court here opted to rule on the merits of appellant's second motion, treating it as a motion for reconsideration. (See Code Civ. Proc., § 1008; *LeFrancois v. Goel* (2005) 35 Cal.4th 1094, 1096–1097 [Code of Civil Procedure section 1008 prohibits "a *party* from making renewed motions not based on new facts or law," but it does not "limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice . . . and a reasonable opportunity to litigate the question"].) The parties did not brief the propriety of the trial court's course of action. Given that the trial court reached the merits of the second motion, we will also reach the merits and decline to dismiss the appeal.

## II. Applicable Law

### A. *Section 1473.7*

Section 1473.7 allows a defendant who is no longer in custody to file a motion to vacate a conviction that "is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1); *People v. Lopez* (2022) 83 Cal.App.5th 698, 709 (*Lopez*).) To show "prejudicial error" under section 1473.7, "a person need only show by a preponderance of the evidence: (1) he did not 'meaningfully

understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) [prejudice, i.e., that] had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 861 (*Mejia*).)

In assessing prejudice, courts "consider the totality of the circumstances," including such factors as "the defendant's ties to the United States, the importance [he] placed on avoiding deportation, [his] priorities in seeking a plea bargain, . . . whether [he] had reason to believe an immigration-neutral negotiated disposition was possible," "[his] probability of obtaining a more favorable outcome" had he rejected the plea, and "the difference between the bargained-for term and the likely term if he were convicted at trial." (*People v. Vivar* (2021) 11 Cal.5th 510, 529–530 (*Vivar*); *People v. Espinoza* (2023) 14 Cal.5th 311, 320 (*Espinoza*).)

It is not enough for a defendant to simply declare that he would not have entered the plea had he understood it would require his deportation; he must provide " ' "objective evidence" ' " to corroborate such an assertion. (*Vivar*, *supra*, 11 Cal.5th at p. 530; *Lopez*, *supra*, 83 Cal.App.5th at p. 715.) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.)

## B. *Standard of Review*

Our Supreme Court has endorsed the independent standard of appellate review for proceedings under section 1473.7. (*Vivar*, *supra*, 11 Cal.5th at pp. 526–527; *Lopez*, *supra*,

83 Cal.App.5th at p. 710.)  Under this standard of review, " ' "an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law," ' " but "must give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [superior court] heard and observed. ' " ' " (*Espinoza*, *supra*, 14 Cal.5th at pp. 319–320.)

## III.  Appellant Failed to Show He Lacked a Meaningful Understanding of Immigration Consequences

Appellant relies solely on his trial attorney's erroneous advice to argue that he did not meaningfully understand the immigration consequences of his plea.  Even if we assume that his trial counsel provided incorrect advice, however, appellant failed to show that such misinformation deprived him of "the ability to meaningfully understand" the actual or potential adverse immigration consequences of his plea.  (See *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 910 [" '[W]hat the defense attorney said or did not say about the immigration consequences of the plea' does not govern the inquiry into subjective misunderstanding"], quoting *People v. Jung* (2020) 59 Cal.App.5th 842, 857, disapproved on other grounds in *Vivar*, *supra*, 11 Cal.5th at p. 526, fn. 4; accord, *Mejia*, *supra*, 36 Cal.App.5th at p. 866 ["The key . . . is the mindset of the defendant and what he . . . understood . . . at the time the plea was taken"].)

The circumstances suggest that appellant was not in fact relying on his trial counsel to understand the immigration consequences:  Appellant was already in deportation proceedings when he was charged with the crimes in this matter, and he had retained an immigration attorney.  Appellant withheld from his trial counsel the fact that he was being advised by an

immigration attorney as well as the fact that he possessed an Armenian passport. Although this immigration attorney died before the hearing on appellant's second motion to vacate his conviction, appellant could have, but did not, explain what information he learned (or did not learn) from his immigration counsel. The facts that can be gleaned—based on the references to the jail calls between appellant and Parido—are that appellant's immigration attorney warned appellant that he could be deported if he pleaded to the charges he faced, and that appellant understood that his conviction could result in deportation.

Moreover, appellant expressly acknowledged, both orally and in writing, that his "no contest" plea had the same force and effect as a guilty plea and that it would result in his deportation. That appellant resisted any plea, including after he consulted his girlfriend during the lunch break, until the first witness was about to be called to testify at the preliminary hearing, further suggests that appellant knew that his plea would have the grave consequence of deportation.

## IV. Appellant Failed to Show a Reasonable Probability He Would Not Have Entered the Plea

Although appellant's strong ties to the United States are not disputed, the statement in his declaration that he "would have taken [his] case to trial or asked [his] attorney to negotiate a different plea" is not borne out by the record. (See *Vivar, supra,* 11 Cal.5th at p. 530 [a defendant's statement to this effect must be corroborated by " ' "objective evidence" ' "]; *Lopez, supra,* 83 Cal.App.5th at p. 715.)

Appellant was charged with 10 felonies, including forcible rape, injuring a cohabitant, first degree burglary with a person

present, stalking, criminal threats, and dissuading a witness. He faced a maximum sentence of 25 years, and his conviction would lead to the same immigration consequences he faced as a result of his plea. His plea to five years for one count of criminal threats was extremely favorable compared to the maximum sentence he faced if he proceeded to trial (*Espinoza, supra,* 14 Cal.5th at p. 320 [difference between bargained-for term and likely term if convicted at trial is relevant factor]), and nothing in the record suggests that appellant had, or believed he had, any viable defenses to the charges he faced (see *Lee v. United States* (2017) 582 U.S. 357, 367 ["A defendant without any viable defense will be highly likely to lose at trial"]; *People v. Martinez* (2013) 57 Cal.4th 555, 564 [" 'an appellate court . . . may consider the probable outcome of any trial, to the extent that may be discerned' "]).

Nor did appellant provide any evidence that at the time of his plea he "had reason to believe an immigration-neutral negotiated disposition was possible" (*Vivar, supra,* 11 Cal.5th at p. 530; *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 665). For example, appellant did not submit a declaration by anyone to show any "alternative, nondeportable dispositions would have been available and acceptable to the prosecutor." (*Abdelsalam,* at p. 665.)

Applying our independent judgment, and viewing the totality of the circumstances, we conclude it is not reasonably probable that appellant would have rejected the plea if he correctly understood its immigration consequences. Appellant has not met his burden of establishing prejudicial error to warrant relief under section 1473.7.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


                                    LUI, P. J.


We concur:



ASHMANN-GERST, J.



CHAVEZ, J.